### THE FRED JANSEN.[1]

#### LYNCH et al. v. THE FRED JANSEN.

##### (District Court, S. D. New York. December 31, 1890.)

COLLISION—OVERTAKING VESSEL—UNEXPECTED SHEER—TIDE-RIP—WIND.

As libelant's schooner T. was going west through the East river under sail, she was overtaken near Negro Point by a schooner in tow of a tug on a hawser some 350 feet long. About the place of collision the T. passed out of slack water into a strong flood-tide, and, the wind at the same time failing, she was swung around by the tide some four to six points, and out into the stream, when she struck the other schooner. When the tug passed the T., the two vessels were on parallel courses, and about 200 feet apart. Held that, under the circumstances, the pilot of the tug could not expect such a large swing on the part of the T., and, as there was no fault in his course, and no indication of danger when he passed the T., the tug could not be held in fault for the collision.

In Admiralty. Suit for damages caused by collision.
McCarthy & Berier, for libelants.
Goodrich, Deady & Goodrich, for claimant.

BROWN, J. The libelants' small schooner Titus, loaded with sand, while going west near Negro Point in the forenoon of May 22, 1890, came into collision with the schooner W. O. Snow, on a hawser about 350 feet long, also going west, in tow of the tug Fred Jansen. The libel alleges that the Titus, being under sail, and the tide strong flood, was coming very close to the Ward's island shore, and that the Jansen and Snow overtook, and negligently ran upon and sunk, her. There is a great difference in the estimates of the distance of the collision from the shore. The whole testimony and the circumstances together leave no doubt in my mind that the collision was at least 250 feet from the shore of Ward's island. There were several other vessels and tows near by. The Snow, in order to avoid the Titus, sheered to port, and thereby hit, and somewhat injured, another vessel, passing to the west on her port side. Abreast of the latter, and just beyond her, a schooner was at the tail end of a tow, going east. There is no probability that all these vessels would be hugging the northerly shore. Certainly the tow going east would naturally take the mid-channel to get the full benefit of the flood-tide, and would thus be about 400 feet from the Ward's island shore, since the channel there is fully 800 feet wide. The collision was prob-

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

ably nearer 300 than 200 feet from shore. As the Titus was previously, no doubt, going close along the shore, it follows that the defendant's account of the collision, through the swing of the Titus towards midstream, must be accepted as the true one. This swing would follow naturally, if not counteracted, upon her going out of the slack water near shore into the line of the strong flood-tide,—a line that runs angling close up to Negro Point. The Titus' own witnesses show that just before collision she became unmanageable, and that her fore peak was dropped, and her wheel put hard to·port, in order to counteract the effect of running into the flood-tide. But, the wind dying away, she had not headway enough to be kept under control, and was consequently carried around some four to six points, and out into the stream, and upon the Snow. With the wind dying away, I do not see how the Titus could have avoided this result, except by casting anchor. I am not satisfied that all this should have been so reasonably foreseen by the Jansen as to charge her with fault. When the latter passed the Titus, as both sides testify, the two vessels were on about parallel courses; and the Jansen must have been 200 feet outside of the Titus, if the latter was within 50 feet of the shore. This was surely a reasonable distance to pass; and, considering the position of the other vessels in the river, the only thing the Jansen could do with her tow was either to go on, or to stop short, and drift with the tide till the Titus should drift to some place unknown, —a course less likely to avoid collision than going on. In truth, the pilot of the Jansen could not know the precise place where the Titus would strike the rip of the flood-tide, or what was her ability to counteract its effects by her sails, her speed, and her helm; and he was not chargeable with any such knowledge. When the tug passed her, there was no indication of trouble or danger. He might expect some swinging by the Titus when she struck the tide, if that were not counteracted; but not, I think, her running so far out into the stream. In the position of the vessels and tows in so peculiar a situation, I have no doubt it was the Jansen's duty to go on, relying on the ability of the Titus to take care of herself by sails, helm, or anchor when she should meet the tide. See The C. H. Northam, 37 Fed. Rep. 238. It was not until after the Jansen had passed that any danger was seen or suspected. When it was seen, the evidence of her witnesses shows that she slowed and stopped her engines. The breaking of the masts and upsetting of the Titus arose from the peculiar and accidental manner of their fouling when they came together. The Jansen, 350 feet away, had no knowledge of this, and could not see it. The headway and momentum of the Snow were sufficient to break the masts and upset the Titus, even though the hawser was slack, as the Jansen's witnesses say it was. The Jansen not being in fault for the collision itself, I do not see how she is chargeable with any such knowledge of the peculiar manner of fouling as to charge her with fault for her management afterwards. The libel is dismissed; but, under the circumstances, without costs.